IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGIE ELLIS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KNIGHT TRANSPORTATION, INC.,<br>and DOES 1 through 50,<br><br>　　　　Defendants. | 1:11-CV-1300  AWI MJS<br><br>ORDER ON DEFENDANT'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT<br><br>(Doc. No. 24) |

　　　　This is an employment related dispute between Plaintiff Margie Ellis ("Ellis") and her former employer, Defendant Knight Transportation, Inc. ("Knight"). Ellis alleges California law claims of retaliation, wrongful discharge in violation of public policy, and failure to pay wages. Currently before the Court is Knight's motion for partial summary judgment on the wrongful discharge and retaliation claims. For the reasons that follow, the motion will be denied.

*Background*

　　　　Section IV of the Scheduling Order in this case sets dates and requirements for filing summary judgment motions. See Doc. No. 18. Part of those requirements directed the parties to meet and confer prior to filing a motion for summary judgment. See id. Six purposes for this meet and confer requirement were identified, including the purpose of arriving at a joint statement of undisputed facts. See id. The Scheduling Order stated that, in addition to the requirements of Local Rule 260, the moving party was to file a joint statement of undisputed facts. See id. The scheduling order also directed, "In the notice of motion, the moving party shall certify that the parties have met and conferred as ordered above," or "set forth a statement of good cause for the failure to meet and confer." Id.

On October 19, 2012, Knight timely filed its motion for summary judgment. See Doc. No. 24. The motion essentially contends that Knight is entitled to summary judgment because the decision makers did not know about Ellis's protected activity and, in any event, the reason for Ellis's termination was non-retaliatory and not pretextual. See Doc. No. 34. However, in the notice of motion, Knight did not certify that it had met and conferred with Ellis, did not submit a statement that demonstrated good cause for not conferring, and did not submit a joint statement of undisputed facts.

On November 5, 2012, Ellis submitted an opposition. See Doc. No. 35. In part, the opposition objects that Defendant failed to follow Local Rule 260 and the Scheduling Order in that no attempt to meet and confer occurred, no joint statement of facts were filed, and no certification regarding a meet and confer session or good cause was submitted. See id. at 1:24-2:12. Ellis also contends that this motion is unnecessary because there are many disputed facts. Ellis has declared that Knight's Vice President of Human Resources, Glen Palmer ("Palmer") spoke with here on May 31, 2012, and admitted that Knight had wrongfully terminated Ellis in retaliation for making a claim for overtime pay with the Department of Labor. See Doc. No. 37 at ¶ 14; see also Doc. No. 35 at 3:1-9.

In reply, Knight's attorney stated that he met and conferred on two occasions about summary judgment and settlement, once in person after a deposition and another time by telephone. Defense counsel states that by the end of the discussions and discovery, it was clear that the parties disagreed over the legal issues which are the subject of the summary judgment motion. Defense counsel states that the error was merely failing to include a certification.

Following receipt of the opposition and reply, the Court ordered Ellis to respond to the objection that her declaration was a "sham," and permitted Knight to file a reply to Ellis's response. In a supplemental declaration, Ellis explains that she thought that the deposition question at issue referred to managers and supervisors in Tulare, California (where she worked), that Palmer worked in Phoenix, Arizona, she did not report to Palmer on a daily basis, and she did not consider him to be either her manager or a supervisor. See Supplemental Ellis Dec. ¶¶ 3, 4. Knight responds that the supplemental declaration is a sham because Ellis testified earlier in

her deposition that she did not have conversations "with anybody at Knight," and also testified that she had "supervisors" in the corporate offices in Phoenix, which indicates that she understood the term "supervisor" to include upper management corporate officers.

*Discussion*

1. <u>Failure To Follow Scheduling Order</u>

The Court concludes that Knight's motion violates the Court's scheduling order. Knight failed to file both a certification and a set of joint undisputed facts. Knight is incorrect in contending that the scheduling order has been followed because the lack of certification was a mere oversight. Irrespective of the certification, the scheduling order required the moving party to initiate a meeting with the non-moving party and to provide a draft of the joint statement of undisputed facts. Defense counsel's declaration does not describe a meeting in which a draft of any joint statement of facts was provided or discussed. The failure to initiate a meeting in which a joint statement of undisputed facts was provided is likely one of the reasons why Ellis believes that Knight's motion is improper.

Given the briefing received, it appears to the Court that a meet and confer session in which a draft joint statement of material facts was discussed could have been productive and may have resulted in a more accurate set of disputed and undisputed facts. For example, as part of the reply, Knight objects to nearly every separate fact submitted by Ellis as "irrelevant," when in fact not all of the additional facts are irrelevant. Further, the issue of the May 31, 2012, statements by Knight's HR officer, Palmer, would have been discussed, and Knight could have addressed the issue in its initial moving papers instead of addressing the issue for the first time in reply. Finally, between Ellis and Knight, the parties submitted a combined 165 allegedly "undisputed" material facts. The Court cannot help but think that the number of facts submitted for consideration would have been reduced.

When a party files a motion for summary judgment in violation of the scheduling order's meet and confer requirements, and the non-moving party objects, the Court generally sustains the non-moving party's objection and denies the summary judgment motion. The Court does not see a good reason to deviate from its practice. Knight's motion will be denied.

### 2. Ellis's Declaration Regarding Statements By Palmer

Alternatively, even if the Court excused the failure to follow the scheduling order's requirements, summary judgment would not be appropriate.

It is true that, generally if the decision maker does not have knowledge of a plaintiff's protected activity, then there can be no retaliation for engaging in protected activity. See Reed v. Avis Budget Group, Inc., 472 Fed. Appx. 525, 526 (9th Cir. 2012); Raad v. Fairbanks N. Star Borough, 323 F.3d 1185, 1197 (9th Cir. 2003); Gunther v. County of Washington, 623 F.2d 1303, 1316 (9th Cir. 1979); George v. California Unemployment Ins. Appeals Bd., 179 Cal.App.4th 1475, 1491 (2009); Morgan v. Regents of University of Cal., 88 Cal.App.4th 52, 70 (2001). Further, the reasons articulated by Knight for the decision to terminate Ellis, i.e. poor performance, are non-discriminatory. However, in summary judgment, the Court is required to make all reasonable inferences in favor of the non-moving party and to credit the non-moving party's evidence. See Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).

As indicated above, Ellis has declared that, on May 31, 2012, Ellis received a telephone call from Palmer. "Mr. Palmer told me that I had been wrongfully terminated in retaliation for making an overtime claim with the Department of Labor." See Ellis Dec. ¶ 14. Palmer is the Vice President of Human Resources for Knight. See Palmer Dec. ¶ 2; Supp. Ellis Dec. ¶ 4. Given Palmer's position with Knight, it is not unreasonable to infer that he knows the reasons behind Ellis's termination. Palmer's statement indicates that Knight and the relevant decision maker(s) were aware of Ellis making a claim with the Department of Labor, i.e. Ellis's protected activity. Further, Palmer's statement constitutes direct evidence of retaliation by Knight and creates a triable issue of material fact regarding the motivation for terminating Ellis. See Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037-39 (9th Cir. 2005); McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).

Knight has objected that Ellis's declarations are shams in that they are inconsistent with Ellis's prior deposition testimony. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012). The sham affidavit rule "bars a plaintiff from

4

creating a factual dispute with himself for the sole purpose of arguing that summary judgment is inappropriate until the dispute is settled." Nelson v. City of Davis, 571 F.3d 924, 927-28 (9th Cir. 2009). "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." Yeager, 693 F.3d at 1080; Van Asdale v. International Gaming Tech., 577 F.3d 989, 998-99 (9th Cir. 2009). "[T]he nonmoving party is not precluded from elaborating upon, explaining, or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." Van Asdale, 577 F.3d at 999. The sham declaration rule is to be applied with caution. Yeager, 693 F.3d at 1080.

Knight relies on three sections of Ellis's deposition to show that Ellis's declarations are shams. First, when asked, "Did anybody at Knight ever say anything to you, any of the supervisors or managers, that suggested that they knew you had initiated the DOL audit?," Ellis responded simply "No." See Ellis Depo. 333:4-11. However, as indicated above, Ellis explains that she thought that this deposition question referred to the local managers and supervisors in Tulare, California, that Palmer was the Vice President of Human Resources in Phoenix, Arizona, she did not report to Palmer on a daily basis, and she did not consider Palmer to be a manager or a supervisor or her manager or supervisor. See Supplemental Ellis Dec. ¶¶ 3, 4, 5. The Court finds this explanation to be plausible. It is not clear that a Vice President of Human Resources would naturally be considered a supervisor or a manager, especially if that officer does not have daily contact with the relevant employee and that officer is located out of state. Further, interpreting the question to refer to local managers and supervisors does not appear unreasonable. The deposition question at page 333 is not clear and unambiguous in relation to Palmer.

Second, Knight contends that Ellis understood that her supervisors included more than just people located in Tulare, California. Knight argues that Ellis testified to having immediate supervisors in Tulare and "indirect supervisors" in Phoenix. Ellis acknowledged that immediate supervisors, indirect supervisors, and "all corporate officers" had the authority to discipline her.

See Ellis Depo. 88:11-91:12.  However, a review of deposition pages 88 to 91 indicates that Ellis was asked about who her supervisors were, and that was clarified to mean who she reported to or who had the ability to discipline her.  See id. at 88:11-18.  Ellis identified her immediate supervisor.  See id. at 88:19-89:4.  Ellis was then asked specifically about "indirect supervisors."  See id. at 89:5-6.  Ellis identified five individuals.  See id. at 89:8-90:9.  Ellis was then asked about who had authority to discipline her, and Ellis expressed confusion about the question.  See id. at 90:10-91:5.  After clarifying that the question meant who could write up Ellis for doing something wrong or suspending or terminating her, Ellis responded that she "had to please every one of those people because if you didn't, they could write you up."  Id. at 91:1-8.  Defense counsel then asked, "So your understanding was that any one of your direct or indirect supervisors could do that?", and Ellis responded, "Because those are all corporate officers are there [sic]."  Id. at 91:9-12.  In context and aside from Ellis's apparent confusion, Ellis's answer was in relation to whom she understood her direct and indirect supervisors to be.  Defense counsel earlier made a distinction between indirect and direct supervisors.  No such distinction was made on Page 333 of the deposition.  Also, the issue of who could discipline Ellis is separate from the issue of who actually managed or supervised Ellis's activities.  Defense counsel separately asked about who could discipline Ellis just after Ellis identified who her indirect supervisors were.  None of the six individuals identified as either Ellis's direct or indirect supervisors was Palmer.  Regardless of whether direct and indirect supervisors were located in Tulare or Phoenix, nothing indicates that Ellis understood Palmer to be her supervisor or manager.  Pages 88 to 91 of the deposition do not sufficiently contradict Ellis's declarations.

      Finally, when asked, "After Mr. Lee came to the Tulare Terminal after - - the audit, other than the one communication you discussed with Ms. Nari, you didn't have any further communications with anybody at Knight regarding either the audit or the DOL proceedings or your involvement with them or anything like that, right?", Ellis responded, "No."  See Ellis Depo. 311:1-9.  The Court does not find that this statement contradicts either of Ellis's declarations.  The deposition question was asking about communications concerning either the audit, the Department of Labor proceedings, or Ellis's involvement with the audit or the

Department of Labor proceedings. Ellis's declaration concerns what Palmer told her about her termination. The deposition question on Page 311 does not call for communications regarding Ellis's termination.

In sum, the Court finds that the question on deposition Page 333 is ambiguous and Ellis's explanation for her answer is plausible, deposition pages 88 to 91 do not sufficiently show that Ellis viewed Palmer as her supervisor (irrespective of location), and the subject matter of the question on deposition Page 311 is different from that of Ellis's declarations. The Court cannot hold that any contradictions are "shams," nor can the Court hold that any inconsistencies are clear and unambiguous. See Yeager, 693 F.3d at 1080; Van Asdale., 577 F.3d at 998-99. Therefore, the Court will not strike Ellis's declarations as "shams."[1] See id.

Making all reasonable inferences in Ellis's favor, the statements made by Palmer during the May 2012 telephone conversation are sufficient to imply knowledge by the decision maker(s) and to show a retaliatory motivation in terminating Ellis. Therefore, consideration of Ellis's declaration compels denial of summary judgment.

## CONCLUSION

Knight has moved for summary judgment. Summary judgment is inappropriate for two alternate reasons. First, Knight did not follow the scheduling order's requirements prior to moving for summary judgment. Second, Ellis's declaration is not a sham and is sufficient to raise genuine disputed material fact on the issue of Knight's motivation for terminating Ellis.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:   December 14, 2012

_____
UNITED STATES DISTRICT JUDGE

---

[1] The Court is only holding that Ellis's declarations are not shams. This analysis does not preclude Knight from arguing to the jury that the Palmer's telephone statements never occurred and/or Ellis's account is not credible.

7